There you are, Mr. Sear. I'm looking at this nice room. All right, we are ready to hear argument in the case of Illinois Republican Party against Governor J. B. Pritzker. And Mr. Sear, you may proceed. Thank you, Your Honor. Let me begin by expressing my appreciation to this court and opposing counsel for hearing this case on an expedited basis. I realize that it's my client's interest in having this resolved before the election. And I know people are busy, especially in these unusual days. So thank you for that. Your Honor, the First Amendment guarantees speakers the right of equal treatment in the public square. That principle is true in war or peace. It is true at two o'clock in the morning or two o'clock in the afternoon. And it is true in a So, Mr. Sear, let me ask you this then. If equality is what the principle is, what remedy does the Republican Party seek? And how is your remedy consistent with Section 8 of the executive order, which seems to contemplate that if any part of that order has a problem, that part should be severed and taken out? So in other words, wouldn't the natural remedy simply be to take away the special dispensation for the churches? No, I think Your Honor is really pointing us to Barr v. American Association of Political Consultants, which is— Among other things. I mean, there's actually a whole line of cases, going back to my knowledge, something like 40 or 50 years, where the Supreme Court says, if you're looking for equality, equality can be up, equality can be down. And if the churches were to lose their ability to have gatherings of more than 50, then you and they and everyone else would be in exactly the same position. And you wouldn't have any reason to fear a content-based classification. Well, the first thing I'd say, Your Honor, is that the state has not sought that as a possible resolution to this case. The second thing I would say, though, I do think Barr is the most— It's not their case. Fair enough. Mr. Schor, I mean, I don't know that this is even necessarily about severability, because even if you won, this isn't a statute. Presumably, if you win, then the governor is going to issue a new executive order saying that it flatly applies to everyone with no exception. That could be one consequence, Your Honor. The other option for the governor is to adopt a rule that is neutral for all First Amendment expression. But that's been one of our concerns all along. I see no logical stopping point from your position, certainly political speech, whether it's the Republican Party, the Democratic Party, the Green Party, the Right to Life Association, the Save the Planet people, whoever, they're all engaged in speech that's protected by First Amendment. And I think the logic of your position, which may be where one has to go, I don't rule that out, but the logic of your position is that there can be no distinction among groups and that everybody has to be able to have meetings as big as they wish. So I think Reid v. Todd of Gilbert is really the guide here, Your Honor. Which is why I asked the first question, why isn't under Reid, you just have to be the same. But it doesn't necessarily mean the governor has to give up on his concern about very large indoor gatherings. You're right, ma'am. The governor could issue an order that is neutral. That order could be neutral in allowing no speech or it could be neutral in allowing all protected First Amendment expression. The core of Reid is neutrality. I think what Barr v. the political consultants also teaches us, though, is that in that case, we're looking at a very narrow exception. What's narrow about it? Well, the number of phone calls, automated phone calls that are for a government debt collection is an extraordinarily small slice of the overall pie of phone calls. And the core plurality sort of defers to this future, this question of what do you do if there's an exception that's so big that it almost swallows the rule. The second thing I would say in this case is there's a real problem as to the time aspect that's not present in Barr. So in this case, my client wants to respond to the speech of people who have spoken before. I don't think the rule can be, well, you spoke first. Now we see you shouldn't have spoken at all. So nobody gets to respond. I'm sorry. Go ahead. Go ahead, Judge Barrett. I guess I just, I still don't understand your position because really, you know, it doesn't have to be about severability. As Judge Wood said, really what you're asking for is all or nothing. I mean, the churches here have an additional interest as, you know, the order of the motions panel. And as the district court pointed out, it's not just speech. It's also free exercise. And so really the question seems to be that when the government has an admittedly compelling interest in stemming the outbreak of the COVID-19 pandemic, can it carve out a very narrow exception? This isn't one of those cases where the prohibition was riddled with exceptions. I mean, I would be very concerned if in fact, the order actually had an exception for Black Lives Matter protests. Because then you're talking apples to apples. You're talking political speech to political speech, and it's the same right at issue. But here, the exception that's been carved out for churches isn't just speech to speech. It's not apples to apples. It's speech plus free exercise against speech. So I would say this is speech plus politics, Your Honor, that what my clients- Does that mean anything? No, what is speech? Speech plus politics? Yeah, so many parts of the Constitution protect what a political party tries to do. Not only the core speech clause, but the broader- Well, of course, there were no political parties when the Constitution was written, I have to remind you. But can you think of a single case in which the Supreme Court has struck down a provision intended to facilitate free exercise of religion that was not in the Establishment Clause, that didn't go so far as to be a problem under that clause? I looked, and I couldn't find one. Efforts to be sensitive to the free exercise interests of people. Well, obviously, my client shares a commitment to respecting America's religious liberty tradition. I think what we're saying is, if you look at Reid v. Town of Gilbert, again, I would remind you, Reid is about a pastor. Mr. Chair, under your proposal, where do you draw the line? So you're not saying strike down the religious exemption. You're saying add a political exemption as well. But under the free speech clause, where would we draw the line? What about the next protest that comes along that wants an First Amendment right? How do we distinguish First Amendment rights about political speech versus First Amendment rights about some other cause? So first, ma'am, I'd say that's the governor's job, right? The governor's job is to draw lines. No, it's your job, since you're the one who's attacking the governor's executive order for not drawing the line that you think should have been drawn. You should have some theory of the narrow exemption saying you should be added to it. So why just political? So I think Perry v. Education Association has the key phrase here, which is similar treatment for similar speakers. Political parties live at the heart of the First Amendment, just as much as religious organizations do. Where do you find that? My reading of the First Amendment is that it's a way to distinguish between a single clause addressing religion and zero clauses addressing political parties. So the court has a number of cases that we cite in our brief. Cousins v. Winston is one, O v. San Francisco is another, where the Supreme Court has recognized that political parties do occupy a unique space in our system. And so it rules that might be broadly applicable. For instance, in the free exercise context, we've all seen the recent cases from the court recognizing the right to pick your own leader as a church, thanks to Hosanna Tabor. Even if they're unique, though, how does that put them on the same plane as the free exercise clause in religion? I think they live at the heart of the First Amendment. And so I think what we're saying is that the free speech clause and the free exercise clause, the First Amendment itself treats them as two distinct categories, which is why religion isn't subsumed simply within speech but has its own category. And so the First Amendment itself treats them a little bit as apples and oranges. It says they're not the same thing. And you keep saying they both live at the heart of the First Amendment, but you're in the free speech clause and free exercise lives in a different part of the First Amendment, albeit an overlapping one, I grant you. So I think overlapping, and again, I would just go to Reed v. Donald Gilbert. Reed v. Donald Gilbert was brought by a church. Reed is Pastor Clyde Reed. And there he's asserting this content distinction where, in that case, politics was preferred to religion. But see, that's the thing about all the cases I can think of, Reed being one of them, but one of many. None of them, and none of the cases that have reached the Supreme Court in the emergency mode that two have, are not situations where the state, writ large, is trying to accommodate free exercise interests. They're all cases in which there's been some failure, allegedly, or the free exercise is somehow disadvantaged. And the question is, is that okay? And the Court has said that, you know, by these rather evenly divided votes, but the Court has recognized the pandemic and has said that you don't need to go out of your way to protect free exercise, but you're saying that an effort to respect it is unconstitutional. I'm saying the Governor made a policy choice to go above and beyond what the free exercise clause protects. And that policy choice is subject to strict scrutiny under Reed versus Town of Gilbert. He has made a policy choice to prefer one category of content. We would argue two categories of content. We've got Black Lives Matter and racial injustice protests to talk about as well, but he's made a policy choice to prefer one category of content. And just like the Town Board's decision to prefer politics over religion was subject to strict scrutiny, the Governor's policy choice to prefer religion over politics is equally subject to scrutiny. But Mr. Stern, in Reed, the exception was so large, you know, for the signs that it called into question how compelling the interest was. Here, nobody doubts the compellingness of the compelling interest. Everyone agrees that the interest is sound. And here, the exemption is really quite narrow. I'm not even convinced. I mean, this is not a detailed executive order. I'm not even convinced. And in fact, you know, the state in its brief says that this would not be the case, that all of the apples-to-apples activity that a church might have, like a fundraiser, you know, or a church picnic, that those kinds of things would be counted as free exercise. And those are analogous to some of the activities that the Republican Party intends to undertake themselves. So, Your Honor, I would say the difference in treatment between, again, I'll put it to you. The difference in treatment between 100 people gathered in a church and 100 people gathered at a political rally, the only difference is the commutative content coming from the audiences gathered and from the speakers. Sure, so that gets you strict scrutiny. I'll grant you that. Let's say it's not content neutral. And so then, really, we're at this question of narrow tailoring. Is an exemption for religion narrowly tailored? For religious services, as Judge Barrett is saying, not necessarily the church picnic or you know, the field trip. So, you know, one of the things the state, I think, has said is that they think of religious exercise very broadly. But to your point, Judge Barrett, I come back to what I said before, that the purpose of the Free Speech Clause, at its heart, at its core, is to protect discussion of politics, of our public life together. And that is just as compelling as the government's desire here to make a policy choice to extend a special solicitude to religion. It's a content preference and that's subject to strict scrutiny. And simply saying religion is special, I understand religion is special. I guess I just feel like politics is special too. That's what the Free Speech Clause is, more than nude dancing, more than commercial speech. At its heart, it's about politics. And we're going to an election in four months. And this is the time that that clause should have its greatest urgency. So, if you'd like to save just a sliver for rebuttal, you're about out of time. I would, ma'am. Thank you. Thank you. Ms. Gupta. May it please the Court. Assistant Attorney General Priyanka Gupta for Defendant Appellee Governor Pritzker. Plaintiffs would like to meet in person in groups larger than 50 people during the pandemic. But the governor's limit on in-person gatherings seeks to curb the spread of COVID-19. And the exemption for religious exercise does not render this effort to protect the public health and safety unconstitutional. Gupta, I have a question for you about the Black Lives Matter alleged exception. The plaintiffs say that the governor has accepted and treated differently Black Lives Matter protests. Was there any, obviously nothing appears in the order. Did the governor ever adopt or announce a formal policy that, of permitting Black Lives Matter protests? No, Your Honor, he has not. Instead, plaintiffs point to statements from June in which the governor sympathized with the First Amendment rights of their protesters. And since then, he has issued two executive orders, and neither of those carried an exemption for any type of protest. So, we think that confirms that there was no implied exemption to begin with. Instead, we are dealing here with the exemption for religious exercise. And the Supreme Court has long held that when the government removes a burden from religious exercise, it need not accommodate other rights or activity in the same way. And so, we believe the order is constitutional under any standard of review. Now, Ms. Gupta, wouldn't you say, though, I mean, there are a lot of churches around, and surely to the extent this order is permitting 51 people or 400 people or whatever the number may be for a given church, it, to that degree, undermines the concern about COVID or the coronavirus spreading among large groups of people. It's sort of a, it doesn't move in the same direction as the compelling interest the governor has for the general restrictions that this court looked at in the LM case. Yes, Your Honor, but at the time these orders were entered, Illinois was seeing some relative progress in its fight against the virus. And so, the governor made a reasonable policy choice to start opening up the state. For example, now gatherings of up to 50 people are allowed, and that doesn't serve the interest in stopping the virus. And the religious exercise is also a reasonable starting point, given the longstanding tradition in our nation of offering this unique solicitude to religion, which is, as Your Honor pointed out, apparent in the text of the First Amendment itself. And we believe the proper standard to look at these measures taken during a pandemic is the Jacobson standard of review. And there, the Supreme Court recognized that a state may protect itself from the spread of a disease so long as this measure is substantially related to the public health and also does not plainly invade a constitutional right. Let me suggest two different ways of looking at Jacobson. As I understand the Republican Party position, they're looking only at the public health interest, which after all is what Jacobson was talking about, the smallpox, the vaccinations, all within one box, if you will. Whereas what the governor seems to be saying is that there's a broader type of balancing that's going on in which the public health plays one part, but the concern for freedom of religion and free exercise plays another part. And so it's a somewhat more broad reading of Jacobson, where I presume the governor's position is that it's not a judicial function, at least, to weigh those interests. It's, in the case of an executive order, it would be the governor's job or perhaps legislature's job in some other areas. So why should we take the broader view of Jacobson instead of the narrow public health perspective? Your Honor, a broad view is appropriate because in Jacobson, the Supreme Court emphasized that the mode or manner in which the executive accomplishes its goal or the legislature shouldn't be second-guessed by the judiciary. And so the main point of Jacobson was that there should be some substantial relation to the public health. The order as a whole still has a substantial relationship with the public health, but because the pandemic has been going on with so many months, a response to the public health will involve balancing other interests that maybe took a back seat towards the beginning of the pandemic. And so that's why we believe Jacobson is still appropriate. Now, we're not asking for Jacobson deference forever as long as COVID-19 lasts. With the advent of a vaccine or treatment or maybe a significant change in social behavior as some other countries have seen, Illinois will hopefully be able to curb the spread of this virus for a longer period of time and to a greater extent. Ms. Gupta, how should the fact that this is an election year and the election is quickly approaching, how should that impact the court's analysis? Your Honor, we don't think that changes this analysis because we agree that political speech is a very important interest, especially during an election year. But the Supreme Court has emphasized, such as in Cutter against Wilkinson, that the protections for fundamental rights do not need to march in lockstep. So for example, the court pointed out in that case that the state of Ohio allowed prisoners to meet for religious reasons but not political ones. And that was okay because of this unique solicitude. So even during an election year, religion is entitled to the special solicitude which is considered the best of our traditions of our nation. So I don't think it changes the ultimate outcome of this case. Should it be a consideration for us in the balancing of the harms? Your Honor, I think it could be a factor, but the balancing of the harms would still weigh in favor of not granting the injunction here. And that's for a couple of reasons. First, plaintiffs are still able to meet in groups of up to 50 people. And so we're not prohibiting their speech completely, but rather just limiting in-person gatherings to 50 people. So they can still accomplish many of the goals they outlined, such as press conferences and phone banks and the like. And second, the more exemptions that are added to the order, the greater the risk to the public's health. There's still a lot we don't know about this virus, but what we do know is that the more people that gather, the more the virus will spread. And plaintiffs themselves list a host of activities that they would like to conduct in groups larger than 50 people, such as house parties, luncheons, bus tours, and rallies, just to name a few. And that's just plaintiffs. If all political gatherings were allowed, this would greatly endanger the public health. And so the balance of harms still tips in favor of not granting the injunction here, regardless of whether it's an election year or not. So there's some discussion about whether we are approaching this under a strict scrutiny lens or whether intermediate scrutiny. And you argued in your brief for intermediate scrutiny, but why isn't it the case that, just as in Reed against Gilbert, you really don't know what kind of event you have until you listen to the speech. It's either candidate X's stump speech or it's pastor Y's religious service. And that makes it sound like a content restriction, and it makes it sound as though, now that, as I understand, everybody concedes compelling interest, it makes it sound as though the strict, narrow tailoring has to be achieved. So how is this narrowly tailored? Your Honor, so to answer the first part of your question, the court, enforcement officials would not necessarily need to listen to the speech of the activity. For example, if an authority went to a church and there was a service being held with Bibles out, that was clearly a religious exercise. So there are other aspects of the activity officials can look to determine whether it's religious exercise or not. But even if this court applies strict scrutiny, we believe that order is narrowly tailored because it involves balancing two compelling interests. In Reed, the government had only listed two interests, traffic safety and aesthetic appeal, and a regulation of signs that treated some signs different than others did not serve these two interests. But here, our interests are protecting the public health and safety from the virus, as well as protecting the exercise of religion. And the order does serve a balance of those two interests. That's just badly lawyered. I mean, maybe they should have said these signs directing you to the locations of the church were in furtherance of the free exercise rights of the parishioners. Your Honor, perhaps that was not an interest at place. The regulation there distinguished between directional signs versus ideological or political. And so I believe that perhaps the area there did not have as strong of an interest in regulating those signs. So I wouldn't say that it was badly lawyered, but just based upon the decision that we have it, the Supreme Court's reasoning said you've only articulated two interests. And the court pointed that out. And this regulation does not serve those two interests. But here, we have articulated two different interests which can be balanced. And the government faces competing, compelling interests all the time. That's why there are a whole host of statutes that include exemptions for religious exercise, for example, such as... Could it go the other way? We know that... So we've talked before, and you were getting ready to identify some of the statutes which treat religion, give it a place of special solicitude. Could the governor choose to balance things differently and say, give the Republican Party and other political speech the exemption and religious worship not get the exception? And on the justification that he was trying to balance both public health and safety and political expression, would that be permissible? Your Honor, I think that would be a more difficult argument to make because there's not that same tradition of unique treatment. There's nothing in the First Amendment that says political activity is especially protected on its own. Instead, the First Amendment has these two clauses directed towards religion. So I'm not sure that it could go the other way. The governor hasn't done anything close to that, and rather the exemptions are religious exercise, emergencies, and governments. And so we think that these decisions should be left to the governor, as opposing counsel noted at a couple of points, and the lines that the governor has chosen to draw during this pandemic is reasonable. And to return to Judge Wood's question for opposing counsel, should this court find that the exemption should be stretched more broadly? I think that would only apply to the executive order in place, which expires on August 22nd, and we have no way of knowing whether the next order would then continue to carry this exemption for religious exercise, given the potential harms to the public if the exemption were stretched more broadly. I would also push back on opposing counsel's point that the exemption would only need to stop at political speech, because they've already shown that that's not their position. They tried to consolidate this with the Right to Life Committee case, in which they made the exact same arguments for expressive associations talking on matters of social concern. So we have already seen from the procedural history of the case, there's not really a logical stopping point to granting plaintiffs the injunctions they seek. And so that goes back to the balancing harms and the concerns we have of the order being stretched in this way. Can I go back for just a second to Black Lives Matter? Is it your position that actions never speak louder than words, that no matter what the governor does to signal the de facto exemptions to this order, it doesn't matter, that we should just look at the text of the order itself? No, Your Honor. I think there could be a scenario where a governor acted in a way to create a policy exemption, but that's a far cry from what happened here. It made sense for the governor to make these political statements, sympathizing with the rights of these protesters, given the social strife that erupted across our nation. Instead, our position is that when these political statements are made, they don't necessarily create a policy exemption, and there wasn't one here, given that the subsequent executive orders did not create an explicit exemption, which would have been the logical next step. And so we do think, again, that the only exemption here is religious exercise, and I would just reiterate that even if this court were to apply strict scrutiny, we think that the order would survive such review. And plaintiffs have not explained why cases such as Amos or Cutter against Wilkinson, where the Supreme Court has emphasized its unique solicitude for religious exercise, do not apply here. And in fact, accepting plaintiffs' position... Can I ask you a question about what the state's position is on what the scope of free exercise is? Not just generally, but in the order. You know, you make the point that an academic lecture on the Ten Commandments or on religion would not qualify for protection, whereas, you know, a homily about the Ten Commandments in the context of a religious service would. So when I was speaking with opposing counsel, I said it's not clear to me that the church fundraiser or the church picnic would come with under the order's exemption. What is the state's position on that? How broadly does that exemption sweep? Your Honor, I agree with you that a church picnic would likely not be the free exercise of religion. I do think free exercise goes beyond religious services because some faiths show their expression in other ways, for example, through meditation in large group or other ways. So I think the exemption is broader, but it is limited to religious worship, not to just any activity undertaken by a place of worship. And so I do agree with the way Your Honor has characterized it. If this Court has no other questions, we'd like to rest on the arguments made in our brief. I see that I'm almost out of time, and we would ask that this Court affirm the District Court's decision denying plaintiffs an injunction that would allow them to meet in groups larger than 50 people during the pandemic. All right. Thank you, Ms. Gupta. And Mr. Sear, we'll round it up to a minute and give him a minute rebuttal. I appreciate the courtesy, Your Honor. I have five very quick points. I'll try to keep the nature of the sentence. First, I want to say the governor has lots of options to prevent the spread of COVID, but picking winners and losers among speakers is not one of them. Second, I would say the governor explicitly ordered the National Guard not to enforce the law against Black Lives Matter protests, although I think you're correct, Judge Wood, that beyond that actions do have consequences and can create policy. Third, I would remind you that religious expression in Illinois is very broad. I would venture to say that more people in Illinois each week attend church services than attend Republican rallies if they were permitted. This idea that it's a narrow exception I would push back on. Fourth, in Reed, you have to remember the government, the Court, assumed a compelling interest for the government and said it wasn't narrowly tailored because it was under-inclusive, and that's the same problem we have here. It's under-inclusivity. And fifth and finally, on the balance of harms, I just remind you of the Sixth that it's about the relative balance given what the governor already chooses to permit. Thank you, Your Honor. All right, thank you very much. Thanks to both counsel. We will take this case under advisement and the court will be in recess. Thank you.